THOMAS T. CHAN (SBN 129606)
STEVEN S. HANAGAMI (SBN 165093)
FOX ROTHSCHILD LLP
1055 West 7th Street, Suite 1880
Los Angeles, California 90017
Telephone:  213-624-6560
Facsimile:   213-622-1154
Email: tchan@foxrothschild.com
        shanagami@foxrothschild.com
        cliu@foxrothschild.com

Attorneys for Defendants Omni Wood
Product, LLC; First Country, Inc.; New
Harbors America, Inc.; Country Wide
Hardwood Products, Inc.; Caliber Flooring,
Inc.; Hallmark Wood America, Inc.;
Michael Yu; and Fei Li

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALLMARK HARDWOODS, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>OMNI WOOD PRODUCT, LLC, et al.,<br><br>       Defendants. | Case No.  10-05896-SJO-JCG<br><br>**Hon. S. James Otero**<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date: Sept. 26, 2011<br>Time: 10:00 a.m.<br>Location: 312 N. Spring St.<br>       Courtroom 1, 2nd floor |

1

# **Table of Contents**

2

3

I.    INTRODUCTION ......................................................................... 1

4

II.   A SHORT CHRONOLOGY DEMONSTRATES

5     ABANDONMENT AND THE ASSIGNMENT IN GROSS ........................... 2

6     A. For A Year HHI Has Personally Attacked Mr. Yu ...................................... 2

7

8     B.Tony Pan And Alice Pan Abandoned The Hallmark Trademarks ............... 3

9

III.  OWPI'S CONDUCT CONSTITUTES INDISPUTABLE

10    EVIDENCE OF THE ABANDONMENT OF THE HALLMARK

11    TRADEMARKS ............................................................................... 6

12    A. OWPI Did Not Intend To Resume Use Of The Marks ............................... 6

13

14    B. OWPI Abandoned Any Common Law Rights It May Have Had ............... 7

15

16    C. After Abandonment OWPI Could Not Resurrect Its Trademark Rights...... 8

17

18    D. Defendants' Burden Of Proof Is A Preponderance Of The Evidence
      Abandonment is an issue of fact.. ................................................... 9

19

20    IV.   OWPI EFFECTED AN INVALID ASSIGNMENT OF THE MARKS ......... 9

21    A. The November 15, 2008 Assignment In Gross Was Invalid……………..10

22

23    B. An Abandoned Trademark Cannot Be Assigned, Because No
      Assignable Rights Exist……………………………………………..11

24

25    V.    HHI'S COMPLAINT MUST BE DISMISSED ........................................... 11

26    A. HHI Owns None Of The Rights Asserted In Its Complaint……………..12

27

28    B. HHI Should Never Have Filed This Lawsuit Because It Should Have

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Known Of The Abandonment And The Assignment In Gross...............14

VI.    DISMISSAL OF THE COMPLAINT RESULTS IN MR. YU
       PREVAILING ON HIS COUNTERCLAIMS.....................................14

       A. Mr. Yu Owns The Marks As Against HHI................................……..14

       B. Mr. Yu Owns The Marks As Against Counter-Defendants UWFC,
          Tony Pan, Alice Pan, And Longust, Who All Infringe..........…...…..........15

VII.   MR. YU IS ENTITLED TO SUMMARY JUDGMENT.........................16

VIII.  CONCLUSION...............................................................................17

1

<u>TABLE OF AUTHORITIES</u>

2

3

<u>CASES</u>

4

*Anderson v. Liberty Lobby,*

5

477 U.S. 242, 106 S.Ct. 2505 (1986)............................................................. 16, 17

6

*Auburn Farms Inc. v. McKee Foods Corp.,*

7

1999 WL 588247 (T.T.A.B. 1999) ........................................................... 8, 11, 17

8

*Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,*

9

892 F.2d 1021 (Fed. Cir. 1989)..................................................................... 8, 9, 17

10

*Conversive, Inc. v. Conversagent, Inc.,*

11

433 F.Supp.2d 1079 (C.D. Cal. 2006) ...................................................... 10, 11, 17

12

*Cortez-Pineda v. Holder,*

13

610 F.3d 1118 (9th Cir. 2010)…………………………………………... ..... 12

14

*Emergency One, Inc. v. Am. FireEagle, Inc.,*

15

228 F.3d 531 (4th Cir. 2000)........................................................................................ 9

16

*Exxon Corp. v. Humble Exploration Co.,*

17

695 F.2d 96 (5th Cir. 1983) ........................................................................................ 7

18

*Grocery Outlet, Inc. v. Albertson's, Inc.,*

19

497 F.3d 949 (9th Cir. 2007)........................................................................................ 9

20

*Imperial Tobacco, Ltd. v. Philip Morris, Inc.,*

21

899 F.2d 1575 (Fed. Cir. 1990)................................................................................... 7

22

*ITC Ltd. v. Punchgini, Inc.,*

23

373 F.Supp.2d 275 (S.D.N.Y. 2005)........................................................................... 7

24

*Kremen v. Cohen,*

25

337 F.3d 1024 (9th Cir. 2003) ................................................................................... 10

26

*Markman v. Westview Instruments, Inc.,*

27

52 F.3d 967 (Fed. Cir. 1995)..................................................................................... 10

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*Mister Donut of America, Inc. v. Mr. Donut, Inc.*,

    418 F.2d 838 (9th Cir. 1969) ........................................................... 10

*Money Store v. Harriscorp Finance, Inc.*,

    689 F.2d 666 (7th Cir. 1982) ........................................................... 11

*Morgan Creek Products, Inc. v. Capital Cities/ABC, Inc.*,

    1991 WL 352619 (C.D. Cal. Oct. 28, 1991) ................................... 9

*Rivard v. Linville*,

    133 F.3d 1446 (Fed. Cir. 1998) ...................................................... 9

*Ruolo v. Russ Berrie & Co., Inc.*,

    886 F.2d 931 (7th Cir. 1989) ........................................................ 9

*Stromgren Supports, Inc. v. Bike Athletic Co.*,

    1997 WL 377630 (T.T.A.B. 1997) ............................................ 8, 13

*United Drug Co. v. Theodore Rectanus Co.*,

    248 U.S. 90 39 S. Ct. 48 (1918) .................................................... 10

### STATUTES AND RULES

15 U.S.C. § 1127 ..................................................................................... 7, 9

15 U.S.C. 1125(a) ........................................................................................ 13

28 U.S.C. § 1295(a)(4)(B) ............................................................................ 9

37 C.F.R. §§ 2.33, 2.193(e) ........................................................................ 6

### TREATISES

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*

    (4th ed.) (Thomson Reuters 2010) ......................................... 6, 11

## I. __INTRODUCTION__

In 2006 Omni Wood Product, Inc. ("OWPI"), an ostensible predecessor of plaintiff Hallmark Hardwoods, Inc. ("HHI"), applied for three federal trademark registrations ("the Hallmark trademarks" or the "trademarks"). Although the federal trademarks issued in 2007, OWPI abandoned the marks when it stopped selling flooring products in April 2007. In fact, OWPI stopped conducting business altogether and abandoned the marks. Tony Pan, who controls HHI, admits as much. Because the marks were abandoned in 2007, no trademark rights existed in November 2008 when OWPI tried to assign them to another Pan company, United Wood Floor Corporation ("UWFC"). Moreover, no proof exists that UWFC actually paid OWPI the consideration required by the November 2008 assignment, adding a sham contract to the fatal flaw of assigning invalid trademarks. OWPI's trademark ownership was and is a fraud.

Shortly after OWPI's invalid assignment, Alice Pan, Tony Pan's wife and president of OWPI, dissolved OWPI. The dissolution is additional evidence of abandonment. In March 2009, OWPI again tried to assign the marks to UWFC. By then, however, it was too late. The marks had been abandoned for two years, so no trademark rights existed. OWPI possessed no rights to assign. Logically, then, UWFC possessed no trademark rights when it tried to assign the marks to HHI in 2010. The undisputed facts establish that OWPI abandoned both its federal and common law rights.

Even *if*, arguendo, OWPI had not abandoned the marks in 2007, its November 2008 assignment to UFWC was invalid, because OWPI did not assign the goodwill of either its business or its trademarks. Because the goodwill was not transferred, the transaction constituted an assignment in gross, i.e., an invalid assignment of the trademarks. OWPI's March 2009 assignment to UWFC tried to correct the infirmities of the November 2008 assignment by reciting goodwill in the assignment. The

rectification, however, was too little too late. The March 2009 assignment could not cure two years of abandonment.

The undisputed facts demonstrate that the trademarks on which HHI filed suit in 2010 have not belonged to OWPI, UWFC, or HHI for four years. No chain of title exists by which HHI can own them. In other words, HHI's First Amended Complaint, Doc. 24, fails. Judgment should be entered on Defendants' affirmative defense of abandonment and the First Amended Complaint should be dismissed with prejudice. Summary judgment also leaves Mr. Yu as the one person who continuously used the trademarks before and after OWPI's abandonment. Therefore, he is the true owner of the trademarks. Counter-Defendants HHI, UWFC, Tony Pan, Alice Pan, and HHI's customer Longust Distributing, Inc. ("Longust") admit in their pleadings that they willfully infringe the marks. The only remaining issue for trial is damages.

## II.   A SHORT CHRONOLOGY DEMONSTRATES ABANDONMENT AND THE ASSIGNMENT IN GROSS

### A. For A Year HHI Has Personally Attacked Mr. Yu

From the inception of this litigation HHI has tried to obscure the critical issues. HHI has eschewed trademark issues in favor of unseemly personal attacks on Mr. Yu. Summary judgment based on abandonment and assignment in gross, however, requires not one fact, material or otherwise, that involves the conduct of the wrongly importuned Mr. Yu. With discovery closed, HHI now must confront the unvarnished facts. Tony Pan's and Alice Pan's conduct divested their companies of whatever trademark rights may have existed.

HHI began this case in 2010 by futilely seeking an *ex parte* TRO and seizure order without notice, based on its purported ownership of three federally registered trademarks: a) Reg. No. 3,289,376 ("`376") for Hallmark Hardwoods; b) Reg. No. 3,289,349 ("`349") for Hallmark Hardwoods with a stylized "H"; and c) Reg. No. 3,200,275 for a stylized "H" ("`275") (collectively "the Hallmark trademarks" or "the

marks"). Exhs.1-3.[1]  The Court recognized the tactic for what it was, denying the
motion because HHI had provided no justification for a TRO without notice. Doc. 25
at 5-6. HHI then repeatedly burdened the court with unsuccessful preliminary
injunction, Rule 11, and withdrawn motions to compel. Tony Pan and Alice Pan
wreaked havoc by appearing at their own depositions unrepresented by counsel, while
Mr. Pan was instructed by counsel not to prepare for his Rule 30(b)(6) deposition.
Exh. 8, T. Pan dep., p. 163. One motion sought a forensic examination of Mr. Yu's
computer and cellphone for unproduced emails, but ultimately it was HHI that
produced 1,800 pages of emails the day after discovery closed. Docs. 160, 183, 185,
186; Hanagami Decl., ¶ 7.

 Now that HHI has exhausted its procedural gambits, it has become apparent
that HHI knew from the outset that it did not own the Hallmark trademarks, and never
has.

### B. Tony Pan And Alice Pan Abandoned The Hallmark Trademarks

 The story of OWPI's use, or nonuse, of the Hallmark trademarks is simple, in
part because of HHI's evidentiary void. OWPI applied for the trademarks. Exhs. 1-3.
HHI, however, has produced no evidence that OWPI ever used the trademarks: no
purchase orders, no shipping tickets, no invoices, no documentation of a first sale –
nothing.  By April 2007, OWPI had no rights to assign. Here is the chronology.

- March 2006-Sept. 2007: OWPI applies for and obtains the three federal
  trademark registrations.  Exhs. 1-3.[2]

- April 2007: OWPI stops doing business. Tony Pan admits that OWPI
  discontinued sales of Hallmark branded products (assuming OWPI was

---

[1] All exhibits are attached to the Declaration of Steven S. Hanagami ("Hanagami
Decl."). "Doc." followed by a number indicates a docket entry. Defendants request
that the Court take judicial notice of the docket entries. Fed. R. Evid. 201.

[2] Defendants assume for the limited purpose of abandonment that OWPI owned
whatever trademark rights existed in 2006. Even that assumption results in Mr. Yu's
ownership of the trademarks and willful infringement by the Counter-Defendants.

selling any), and it abandoned the use of the Hallmark trademarks. Exh. 8, T. Pan dep., June 20, 2011, p. 34, 35, 60. At this point, abandonment causes OWPI to lose its trademark rights.

- November 15, 2008: A year and a half after abandoning the trademarks, in a one page, self-dealing document between the Pans' OWPI and their other company, UWFC, OWPI sells the three Hallmark trademarks and a fourth trademark for $2,000.00. The sale is for the "trademarks" and their "exclusive rights." Exh. 4. The assignment fails to mention the trademarks' goodwill, so it is invalid. No record of the payment exists to verify the sale, so the assignment itself is a sham for lack of consideration. See Hanagami Decl., ¶ 6.

- December 18, 2008: Alice Pan, whose Chinese name is Hong Yu Fu, files a certificate of dissolution of OWPI. She signs the document on November 26, 2008 in her capacity as a director. Exh. 5.

- March 11, 2009: OWPI tries to correct the November 2008 invalid assignment to UWFC and records its new assignment with the Trademark Office. Exh. 6.  Here the one-page, self-dealing document between the two Pan companies does recite the transfer of goodwill. The assignment purports to be effective November 15, 2008, but Alice Pan admits signing it in March, not November. Exh. 12, A. Pan dep., pp. 43-45. Thus, the March 2009 assignment was improperly backdated four months, because the Pans were belatedly trying to cure both the invalidity of the November 2008 assignment and the abandonment of OWPI's trademarks.

- January 15, 2010: UWFC tries to assign the trademarks to HHI.  Exh. 7.

No tangible evidence documents OWPI's purported trademark use, including a first sale. See Hanagami Decl., ¶¶ 2-6. HHI has tried to muddy the waters with conflicting assertions. Mr. Pan testified that OWPI's first sale was to Longust, sometime in July or August 2006. Exh. 8, T. Pan dep. June 20, 2011, pp. 129-32.

1   Then he says OWPI never sold to Longust. This kind of prevarication cannot defeat
2   summary judgment. It does underscore HHI's futile attempts to muddy the trademark
3   issues. The following short colloquy captures HHI's strategy.

4       Q:  -- did Omni Wood Product, Inc. ever do any business with Longust?

5       A:  To my memory no.

6   Exh. 9, T. Pan dep., Aug. 2, 2011, p. 605. Mr. Pan only recanted his testimony
7   when his counsel violated Fed. R. Civ. P. 30(c)(2) by coaching his witness.

8       *[HHI COUNSEL]: Tony, do you remember saying that. . . .*

9        A:  I deny I say that, because if I remember now, Omni Wood Product,
10      Inc. have been doing with Longust, it's the first order to – actually first one
11      to sell Hallmark, so –

12  *Id*. at 606 (emphasis added). Immediately thereafter, HHI's counsel abruptly
13  terminated the deposition. *Id*.

14      This equivocation cannot fill the evidentiary void that shows OWPI never used
15  the marks. Just as importantly, it has no effect on OWPI's abandonment of the
16  Hallmark trademarks. Regardless of improper coaching, HHI's counsel could not
17  change Tony Pan's earlier answers, which demolish OWPI's trademark rights.

18      A:    Yes. We have PO.

19      Q:    For Hallmark branded products?

20      A:    For Hallmark products, yes.

21      Q:    But not after April 2007?

22      A:    That's right.

23      Q:    Because after April 2007, Omni Wood Product, Inc. abandoned the
24      use of the mark?

25      A:    That's right.

26  Exh. 8, T. Pan dep., June 20, 2011, p. 60.

27      Irrespective of whether OWPI used the Hallmark trademarks in 2006 – and
28  Defendants contend OWPI did not – in April 2007 OWPI abandoned the marks for

good.  Discovery unearthed one possible OWPI invoice that HHI could claim as a sale of a Hallmark product, but even that turned out to be a red herring. Tony Pan did not know what the sale was for.  Exh. 9, T. Pan dep., Aug. 2, 2011, pp. 576-77. Jane Huang, a former bookkeeper for the Pans, described the invoice as a sale of old inventory. She could not recall OWPI selling Hallmark branded products. Exh. 10, Huang dep., Aug. 12, 2011, p. 63. No invoices, purchase orders, or shipping documents were produced that could have shown one sale by OWPI to Longust or any purchase orders from Longust to OWPI. Hanagami Decl., ¶¶ 2-6. No evidence demonstrates so much as one bona fide sale of a trademarked product by OWPI.[3]

## III.   OWPI'S CONDUCT CONSTITUTES INDISPUTABLE EVIDENCE OF THE ABANDONMENT OF THE HALLMARK TRADEMARKS

"A trademark is a kind of property, but a very delicate property right. Great care must be taken in the nature of its use, and in the manner in which it is assigned or licensed, lest the significance of the mark be lost."  J. T. McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* (4th ed.) § 2.15 (Thomson Reuters 2010). OWPI ignored its "delicate property right," which turned to dust.

### A. OWPI Did Not Intend To Resume Use Of The Marks

The requirement for proving abandonment under the Lanham Act is "an intent not to resume use of the mark." See 15 U.S.C. § 1127. In contrast, the common law standard for proving abandonment is an intent to abandon. *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 102 (5th Cir. 1983) (discussing the two different

---

[3] The application for the `349 trademark was invalid as to OWPI before it hit the mailbox. The application was signed by Michael Yu. Exh. 11, p. 2. Mr. Yu contends that he signed the application believing it was on his own behalf. Yu Decl., Doc. 96-1, ¶¶ 19-20. Alice Pan, OWPI's president and director, insists that Mr. Yu had never been a representative of any Pan companies. Exh. 12, Alice Pan Dep., pp. 57; see also Doc. 78, ¶ 21, p. 4. Therefore, Mr. Yu was not authorized to sign the application. Accepting Mr. Yu's status as correct for summary judgment, then the application was void as to OWPI, because it was not signed by an individual who had the authority to bind OWPI. 37 C.F.R. §§ 2.33, 2.193(e).

standards).  Intent to resume requires the trademark owner to have plans to resume commercial use of the mark. 695 F.2d at 102. HHI's own evidence demonstrates OWPI's clear intent not to resume. Nor can HHI belatedly fabricate a declaration to conjure up intent. Nothing in the Lanham Act "entitles a registrant who has formerly used the mark to overcome . . . abandonment arising from subsequent non-use by simply averring a subjective affirmative intent" to resume use. *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990).

> The registrant must put forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred.

899 F.2d at 1581.

For the abandonment doctrine to have any teeth, more is required than simply the owner's wish to keep the mark for future use. This would constitute "the impermissible 'warehousing' of the mark against which the abandonment doctrine guards." *ITC Ltd. v. Punchgini, Inc.*, 373 F.Supp.2d 275, 283 (S.D.N.Y. 2005), aff'd in part, 518 F.3d 159, 164 (2d Cir. 2008) (no goodwill lingered after abandonment). "A concrete 'intent to use' is required." *Imperial Tobacco*, 899 F.2d at 1581. OWPI did not have a hint of intent to use or resume use of the Hallmark trademarks.

**B. OWPI Abandoned Any Common Law Rights It May Have Had**

At common law the requirement to prove abandonment is an intent to abandon. *Exxon Corp*, 695 F.2d at 102. Here, the evidence embraces both the federal and common law abandonment standards. OWPI intended to abandon the marks and did so, and they never again showed an intent to resume use. OWPI's corporate dissolution is the clearest statement of its intent to abandon and its intent not to resume use of the mark. That statement, signed on November 26, 2008 by Alice Pan in her capacity as a director, states under penalty of perjury:

2.b  The corporation has *completely* wound up. . . .

1       4.   The known assets have been distributed to the persons entitled thereto.

2   Exh. 5 (emphasis added).

3       Item 2.b establishes that the corporation was *completely* wound up. No

4   additional winding up, like the disposal of the Hallmark trademarks, was necessary

5   after November 26, 2008. Item 4 confirms the wind up: no more assets, trademarks or

6   otherwise, remained when Alice Pan signed the dissolution form. See Exh. 5. Tony

7   Pan's admission places abandonment in April 2007. When Alice Pan dissolved the

8   corporation eighteen months later, OWPI simply confirmed it no longer possessed

9   any Hallmark trademark rights, federal or common law.

10  **C. After Abandonment OWPI Could Not Resurrect Its Trademark Rights**

11      Once a period of nonuse results in abandonment, a resumption of use cannot

12  cure the preceding abandonment. Such resumption represents a new and separate use

13  with a new date of first use. Once a trademark is abandoned, its registration may be

14  cancelled even if the registrant subsequently resumes use of the mark. See *Cerveceria*

15  *Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1027 n.7 (Fed. Cir.

16  1989); *Auburn Farms Inc. v. McKee Foods Corp.*, 1999 WL 588247 *7 (T.T.A.B.

17  1999) (since Auburn started use during the period of McKee's nonuse which led to

18  abandonment, Auburn has priority over McKee's later resumption of use); *Stromgren*

19  *Supports, Inc. v. Bike Athletic Co.*, 1997 WL 377630 *15 (T.T.A.B. 1997)

20  (registration cancelled for abandonment: evidence of intent to resume that occurs

21  after abandonment is evidence of a possible new use which cannot cure the

22  abandonment).

23      An assignment constitutes abandonment by the assignor. He "will have ceased

24  using the mark after the assignment and is deemed to have 'abandoned' it." *Morgan*

25  *Creek Products, Inc. v. Capital Cities/ABC, Inc.*, 1991 WL 352619 *3 (C.D. Cal. Oct.

26  28, 1991). Like a valid assignment, OWPI's invalid assignment, Exh. 4, demonstrates

27  that OWPI intended to cease using the marks with no intent to resume. The invalid

28  assignment reinforces the proof of OWPI's earlier abandonment.

**D.      Defendants' Burden Of Proof Is A Preponderance Of The Evidence**

Abandonment is an issue of fact. See *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998).  The Ninth Circuit has not yet decided on the appropriate burden of proof to establish abandonment under the Lanham Act. In a recent decision expressly skirting the issue, two judges debated over whether the standard is preponderance or clear and convincing. See *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 952-54 (9th Cir. 2007) (concurring opinions of Circuit Judges Wallace and McKeown). The three federal courts of appeal that *have* considered the issue *have come down on the side of the preponderance standard*. See *Emergency One, Inc. v. Am. FireEagle, Inc.*, 228 F.3d 531, 536 (4th Cir. 2000); *Ruolo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989); *Cerveceria Centroamericana*, 892 F.2d at 1023-24 (burden is "heavy," but still a preponderance).

Two points bear emphasis.  First, the three appellate cases predicate their decisions on the Lanham Act, 15 U.S.C. § 1127, not on common law. Second, the Federal Circuit opinion should carry substantial weight in determining the burden of proof, because it is the court that hears the appeals from the Trademark Trial and Appeal Board ("T.T.A.B."). See 28 U.S.C. § 1295(a)(4)(B). Whenever abandonment is raised in the course of an opposition or cancellation proceeding, regardless of the parties or their geographical location, the Federal Circuit sets the evidentiary standard at a preponderance of the evidence. As a practical matter, the burden of proof here should be insignificant, because Mr. Yu shows clearly and convincingly – overwhelmingly – that the marks have been abandoned.

**IV.   OWPI EFFECTED AN INVALID ASSIGNMENT OF THE MARKS**

**A.      The November 15, 2008 Assignment In Gross Was Invalid**

The November 15, 2008 assignment, Exh. 4, was never valid. The transaction was an assignment in gross. Such a transaction occurs when the trademark owner assigns the mark without assigning the goodwill of the business or the goodwill of the mark. *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir.

1969); see *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S. Ct. 48 (1918) (trademark not "a property right in gross"). Summary judgment of assignment in gross does not appear to be a factual issue. The Court decides contract interpretation as a matter of law. See *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 997 (Fed. Cir. 1995) (Mayer, J. concurring). UWFC agreed to pay $2,000.00 for the three Hallmark trademarks (and a fourth trademark) and OWPI's assistance in executing the contract. The agreement makes no reference to the goodwill of the business or the trademarks. See Exh. 4. In other words, OWPI transferred nothing.

"There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed." *United Drug Co.*, 248 U.S. at 97. A trademark is a symbol of existing goodwill. *Id.* The "law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business [and goodwill] with which the mark has been associated." *Conversive, Inc. v. Conversagent, Inc*., 433 F.Supp.2d 1079, 1090 (C.D. Cal. 2006), citing *Mister Donut of America*, 418 F.2d at 842. In short, the November 2008 assignment was an attempt to transfer the trademarks as "a property in gross," which trademark law prohibits. *United Drug Co.*, 248 U.S. at 97. Put simply, no assignment ever occurred.

Interestingly, HHI produced no evidence that OWPI paid UWFC the $2,000.00 called for in the assignment. Without consideration, the contract was a sham. See *Kremen v. Cohen,* 337 F.3d 1024, 1028-29 (9th Cir. 2003)(consideration a necessary element of a contract). Exh. 4 is a piece of paper cooked up by the Pans in an effort to resuscitate trademarks OWPI had already abandoned.

## B.   An Abandoned Trademark Cannot Be Assigned, Because No Assignable Rights Exist

Even if the November 15, 2008 assignment had recited the inclusion of goodwill, the transfer would not have been effective. An abandoned trademark cannot be assigned, because there is no goodwill to assign. When "the mark has not been

used continuously in commerce, there can be no goodwill to transfer." *Conversive, Inc.*, 433 F.Supp.2d at 1090 (Because the alleged owner did not use the mark for two years, "there [was] a lack of evidence that there was any transferable goodwill associated with the mark," even though the assignment purported to transfer the goodwill.). In other words, once the mark has been abandoned through nonuse, there is no viable property right to assign. *Auburn Farms*, 1999 WL 588247 at * 6, citing *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 675 (7th Cir. 1982).[4]  The single-page contract, Exh. 4, was also a sham, because it was an agreement between two Pan-controlled companies that both knew OWPI had abandoned the trademarks.

At this point, little need be said about the 2009 OWPI-UWFC assignment and the 2010 UWFC-HHI assignment, Exhs. 6 and 7.  By March 2009, OWPI had abandoned the marks for more than two years.  OWPI's goodwill in the trademarks no longer existed, so it possessed no transferable rights. UWFC and HHI took nothing with the belated assignments.

## V.   HHI'S COMPLAINT MUST BE DISMISSED

### A. HHI Owns None Of The Rights Asserted In Its Complaint

HHI's First Amended Complaint, Doc. 24, estops HHI from changing its story to one in which Longust, Tony Pan, Alice Pan, UWFC, or some other entity or individual owned the trademarks and assigned them to HHI. In its Complaint HHI asserts that it owns the three federally registered trademarks. Doc. 24, ¶¶ 24-26, p. 6. HHI also incorporates by reference into the Complaint its recordation of the assignment of the three marks. Doc. 24, ¶¶ 24-26, p. 6 and Exhs. A-C pp. 18, 21, 24.

---

[4] Defendants recognize that a non-functioning entity can divest itself of assets. A trademark can be assigned for a bankrupt creditors' benefit. 2 *McCarthy on Trademarks* § 18.28.  But there is a catch. Like an asset of a dissolved corporation, "the trademark of an insolvent . . . cannot be sold apart from the good will symbolized by that trademark. If the tangible assets of a bankrupt are sold without the good will of trademarks being sold, the sale is 'in gross' and invalid." *Id*. Since OWPI's goodwill no longer existed, the dissolved OWPI owned no transferable trademark rights.

The Trademark Assignment Abstract of Title for each mark, Exhs. A-C of the Complaint, traces HHI's title back through the February 2010 assignment from UWFC to HHI, Exh. 7, and the March 2009 assignment from OWPI to UWFC, Exh. 6. The incorporation of the abstract of titles into the Complaint constitutes a judicial admission as to the chain of title. HHI is bound by it. Allegations in a complaint are judicial admissions. *Cortez-Pineda v. Holder*, 610 F.3d 1118, 1122 (9th Cir. 2010). As a result, the admissions in the First Amended Complaint limit HHI's trademark rights to those acquired through the OWPI-UWFC-HHI chain of title. That chain was broken even before OWPI tried to assign the marks to UWFC in 2008. HHI is precluded from fabricating some other chain, so it cannot claim title to the trademarks in suit. One statement in the Complaint dooms HHI's entire case.

> 27.  Plaintiff [HHI] has exclusively used the Hallmark Hardwoods® trademarks described above to identify the source of its products since 2006. As the exclusive owner of the trademarks described above, plaintiff has the right to enforce its exclusive rights in these marks, and to sue others for infringing these marks.

Doc. 24, ¶ 27, pp. 5-6.  In its Answer and Counterclaims Defendants denied the allegations of paragraph 27.  Doc. 66, ¶ 27, p. 6.

Defendants were right, and HHI was wrong. OWPI is extinct and UWFC never possessed rights to assign to anyone. HHI is the only plaintiff. Therefore, only one result is possible: the First Amended Complaint must be dismissed with prejudice because HHI does not own any rights upon which it based this suit. Mr. Yu should be allowed to continue with his counterclaims, including infringement of what are really Mr. Yu's trademarks. HHI contends that Defendants infringe HHI's trademarks, which also cover HHI's products. Therefore, if Mr. Yu owns those trademarks, then HHI, UWFC, the Pans, and Longust infringe Mr. Yu's trademarks. Moreover, the judicial admissions preclude HHI from contending that it or UWFC first used the Hallmark trademarks. UWFC and HHI can only claim common law trademark rights

1  based on a first use after the April 2007 abandonment, by which time Mr. Yu had

2  long been using the Hallmark trademarks. Exh. 13, Tony Pan dep., Aug. 10, 2010,

3  *Dunhua Hardwood Collection, LLC v. United Wood Floor Corp.*, LASC Case No.

4  SC103286, pp. 20-21, 188-89. See *Stromgren Supports, Inc.*, 1997 WL 377630 at

5  *15) (evidence of intent to resume that occurs after abandonment is evidence of a

6  possible new use which cannot cure the abandonment).

7         The First Amended Complaint states five causes of action. The first is

8  infringement of the registered Hallmark trademarks. Doc. 24 at 8. This cause of

9  action is no longer viable because HHI does not own the trademark rights. The

10  second and third causes of action involve allegations of false designation of origin

11  under 15 U.S.C. 1125(a). Doc. 24 at 10-12. These allegations derive from

12  Defendants' alleged counterfeiting and efforts to palm off their products as those of

13  HHI. Those allegations are necessarily founded upon HHI's ownership of the

14  Hallmark trademarks. Since plaintiff does not own those rights, the allegations fail.

15  The fourth cause of action, Doc. 24 at 12-13, is a claim for unfair competition based

16  on a likelihood of confusion with the Hallmark trademarked products. That cause of

17  action also fails for lack of trademark rights. The fifth cause of action seeks a

18  constructive trust, essentially a damage remedy for the first four causes of action.

19  Since the first four fail, so does the fifth.

20  **B. HHI Should Never Have Filed This Lawsuit Because It Should Have**

21  **Known Of The Abandonment And The Assignment In Gross**

22         HHI never should have brought this suit. It knew that it did not own the

23  trademark rights. The testimony of HHI's outside trademark counsel, William

24  Hsiang, also demonstrates that HHI should have known better.

25  Q:    And how do you transfer goodwill?

26  A:    You just have to state that the trademark go[es] with the goodwill, it

27        cannot separate. It's a very peculiar thing but trademark law requires

28        that.

1  Exh. 14, Hsiang dep., Aug. 3, 2011, pp. 188-89. A conversation with Mr. Hsiang and

2  Tony Pan, along with a review of the invalid assignments and the OWPI dissolution,

3  would have established abandonment, no goodwill, and no chain of title. It would

4  have also revealed that the `349 trademark was invalid as to OWPI from the day the

5  application was filed. See note 3, *supra*. HHI never had a case.

6  **VI.    DISMISSAL OF THE COMPLAINT RESULTS IN MR. YU**

7  **PREVAILING ON HIS COUNTERCLAIMS**

8     **A. Mr. Yu Owns The Marks As Against HHI**

9         As the Court is aware from HHI's string of fruitless motions, the parties

10  dispute the ownership of the marks and whether the application for the `349 mark was

11  filed on behalf of Mr. Yu's company Omni Wood Products or on behalf of Tony

12  Pan's OWPI.  See, e.g., Doc. 186 at 3. Mr. Yu contends that he created the Hallmark

13  trademarks and was the first to use them in late 2005 and the beginning of 2006.

14  During this period, Mr. Yu created the words and design of the marks, first affixed

15  the marks on goods made to his specifications, first had the trademarked goods

16  imported into the United States, and first sold the trademarked goods in the United

17  States. Yu Decl., Doc. 96-1, ¶¶ 4-6, and Yu Decl. Exhs. 2-5, Doc. 96-6, pp. 8-16.

18         Although Tony Pan contends HHI owns the trademarks, he admits that

19  between 2006 and 2008 Mr. Yu's companies First Country, Inc. and Countrywide

20  Hardwood Products, Inc., named defendants in this case, supplied him with Hallmark

21  hardwood flooring.  Doc. 78, ¶ 28, p. 5. Exh. 13, T. Pan dep., *Dunhua Hardwood*

22  *Collection, LLC v. United Wood Floor Corp.*, LASC No. 103286, Aug. 10, 2010,  pp.

23  20-21, 188-89. Evidence of flooring products OWPI did purchase, from Mr. Yu or

24  from others, does not appear in any OWPI documents produced by HHI. Likewise, no

25  documents exist, financial or otherwise, suggesting that OWPI and the Hallmark

26  trademarks possessed any sort of goodwill prior to abandonment. Hanagami Decl.,

27  ¶¶ 2-6. The evidentiary void, the dissolution of OWPI, and Tony Pan's admissions

28  that OWPI stopped conducting business and abandoned the marks in April 2007 leave

1   no room for HHI to rebut abandonment. See Exh. 8, T. Pan Dep., pp. 34, 35, 60. Mr.

2   Yu is the prior user, and therefore the owner, of the marks.

3          HHI's admissions prevent it from attributing a first use to someone other than

4   Mr. Yu. Therefore, Mr. Yu owns the Hallmark trademark rights. That resolves one

5   counterclaim. Also, HHI admits willful infringement of Mr. Yu's marks. Doc. 78, ¶

6   49, p. 7. Thus, the only issue for trial, under either the Complaint or Mr. Yu's

7   counterclaims, is the damages HHI, UWFC, Tony Pan, Alice Pan, and Longust

8   (collectively "Counter-Defendants") owe Mr. Yu.

9      **B. Mr. Yu Owns The Marks As Against Counter-Defendants UWFC,**

10        **Tony Pan, Alice Pan, And Longust, Who All Infringe**

11          "Counter-Defendants admit that they have intentionally and willfully used the

12   Marks in interstate commerce." Doc. 78, ¶ 49, p. 7. That admission to Mr. Yu's

13   counterclaims settles the infringement issue and the associated Counterclaims, 1-6

14   and 8. The only remaining question is whether the Counter-Defendants' willful and

15   intentional use of the marks in interstate commerce can defeat Mr. Yu's ownership

16   claim? The answer is no.

17          All of the Counter-Defendants admit that Mr. Yu imported and sold Hallmark

18   trademarked products between early 2006 and August 2008. Doc. 78, ¶ 28, p. 5. They

19   admit he paid for the trademarked products, and he paid the rent on the warehouse

20   where his subtenants Tony Pan and Alice Pan stored the products. Doc. 78, ¶ 29, p. 5.

21   Longust cannot own the marks, because it admits it requires an authorization to use

22   the marks. Doc. 78, ¶ 51, p. 8. UWFC cannot own the trademark rights, because it

23   tried, unsuccessfully, to purchase the rights from OWPI in 2008 when Mr. Yu was, as

24   UWFC admits, selling Hallmark hardwood products. Tony and Alice Pan are

25   corporate officers and directors of HHI and UWFC. Doc. 78, ¶ 62, p. 8. They are

26   responsible for providing HHI's counsel with whatever information was necessary to

27   file suit. They knew they had abandoned the marks, a circumstance they could not

28   correct. They approved their companies' litigation strategy that limits to HHI or Mike

1   Yu the contested title to the trademarks. No reasonable jury could render a verdict

2   other than OWPI abandoned the Hallmark trademarks, the Counter-Defendants never

3   owned the marks, and now Mr. Yu has proven that he does.

4   **VII.  <u>MR. YU IS ENTITLED TO SUMMARY JUDGMENT</u>**

5          Summary judgment of abandonment is proper because "the pleadings,

6   depositions, answers to interrogatories, and admissions on file, together with the

7   affidavits, if any, show that there is no genuine issue as to any material fact and that

8   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

9   A dispute is only genuine "if the evidence is such that a reasonable jury could return a

10  verdict for the non-moving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248,

11  106 S.Ct. 2505 (1986). Here, no reasonable jury could.

12         Confronted with far more than a *prima facie* case of abandonment, HHI has no

13  rebuttal. It cannot show that it did not intend to abandon the marks. It cannot show

14  that it intended to resume (its alleged) use of the marks. HHI's Tony Pan admits that

15  OWPI abandoned the Hallmark trademarks even before OWPI dissolved, OWPI's

16  invalid assignment confirmed OWPI's abandonment, and no evidence exists that

17  suggests a contrary version of the facts. HHI cannot take cover under the requirement

18  that the non-movant's evidence must be believed and that all justifiable inferences are

19  to be drawn in his favor. See *Anderson,* 477 U.S. at 255. There is no evidence,

20  credible or not, to bail out HHI. Nor can HHI argue that it is unfair to draw inferences

21  from its lack of evidence. As the Federal Circuit observed about proving

22  abandonment: [W]ithout resort to proper inferences the burdened party [as Mr. Yu is

23  here,] would be faced with an insurmountable task" in trying "to prove a negative."

24  *Cerveceria Centroamericana*, 892 F.2d at 1024.

25         The preceding summary judgment principles apply to the invalid November

26  2008 assignment in gross, Exh. 4. *If*, arguendo, the marks were not abandoned by

27  November 2008, the assignment was still invalid for failure to transfer the goodwill.

28  By March 2009, two years after abandonment, OWPI tried to assign the goodwill

1  with a backdated assignment, well after the corporation had been dissolved. At that

2  point, OWPI had no trademark rights to transfer. *Conversive, Inc.*, 433 F.Supp.2d at

3  1090 (two year abandonment); *Auburn Farms*, 1999 WL 588247 at \*6. HHI owns no

4  Hallmark trademark rights and never has. Ultimately Mr. Yu owns the marks, not any

5  of the Counter-Defendants, who admit willful infringement in their own pleadings.

6  **VIII.  <u>CONCLUSION</u>**

7       OWPI intended to abandon its common law trademark rights and did not intend

8  to resume its use of its federal registrations. No material facts suggest a contrary

9  result. Likewise, the November 15, 2008 assignment is invalid as an assignment in

10 gross. Therefore, the Court should grant summary judgment that a) the three

11 Hallmark trademarks, both federal and common law, were abandoned by OWPI and

12 invalid as to OWPI for non-use; b) the November 15, 2008 transfer was invalid;

13 c) the March 2009 assignment from OWPI to UWFC was invalid; d) the February

14 2010 assignment from UWFC to HHI was invalid; e) HHI possesses no rights for

15 which this Court can grant a remedy; f) Mr. Yu owns the trademarks; and

16 g) Counter-Defendants have willfully infringed Mr. Yu's trademarks. As a result of

17 summary judgment, the First Amended Complaint should be dismissed with

18 prejudice as to all Defendants. Summary judgment should be granted to Mr. Yu on

19 his Counterclaims 1-6 and 8.

20

21 Dated:  August 29, 2011         Respectfully Submitted,

22                                 FOX ROTHSCHILD LLP

23

24                                 */s/ Thomas T. Chan*
                                Thomas T. Chan

25                                 Steven S. Hanagami

26                                 ATTORNEYS FOR DEFENDANTS

27

28